IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01375

RHONDA PATTERSON-EACHUS,

                Plaintiff,

v.

UNITED AIRLINES, INC.

                Defendant.
_____

COMPLAINT AND JURY DEMAND
_____

PLAINTIFF RHONDA PATTERSON-EACHUS, by and through her counsel, Ciancio, Ciancio, Brown, P.C., hereby submits her *Complaint and Jury Demand* against the above-named Defendant as follows:

**INTRODUCTION**

1. Plaintiff Rhonda Patterson-Eachus (hereinafter "Ms. Eachus") is a former long-term employee of United Airlines, Inc. (hereinafter "United" or "Employer"). Ms. Eachus was a conscientious employee for over thirty-one years and she loved her choice of career and employer. Ms. Eachus was months shy of being able to retire with full United travel benefits when she was suspended, then summarily terminated for engaging in lawful off-duty political activity. Younger female or like-aged males were treated more favorably than Ms. Eachus by being afforded rights under United's progressive discipline policy or by being offered an option to transfer or voluntarily resign in lieu of being terminated.

## JURISDICTION AND VENUE

2. This is a civil action arising under the laws of the United States and is brought pursuant to the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 623(a)(1) *et seq*.), Title VII of the Civil Rights Act of 1965 ("Title VII") (42 U.S.C. § 2000e *et seq*.), and the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. 2701 *et seq*.). Plaintiff also alleges pendent state law claims of civil rights violations under the Colorado Anti-Discrimination Act ("CADA") (Colo. Rev. Stat. § 24-34-402, *et seq*.), including its Lawful Off-Duty Activities Statute ("LODAS") (Colo. Rev. Stat. § 24-34-402.5), claims under the statute prohibiting employers from preventing employees from participating in politics (Colo. Rev. Stat. § 8-2-108), the tort of retaliatory discharge in violation of public policy, and a claim for breach of implied contract.

3. Plaintiff invokes the jurisdiction of the court pursuant to Article III, § 2 of the U.S. Constitution, 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202.

4. Venue is fair and proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Colorado.

5. Plaintiff meets the prerequisites for filing suit under the ADEA, Title VII and CADA:

    a. On April 10, 2018, Plaintiff dual-filed a Charge of Discrimination ("Charge") with the Colorado Civil Rights Division ("CCRD") and the Colorado Office of the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against in violation of the ADEA, Title VII, and CADA

      in the terms and conditions of her employment and in her termination. A copy of the Charge is attached, and incorporated herein by reference, as **Exhibit 1**.

    b. On February 14, 2019, the CCRD issued to Plaintiff a Notice of Right to Sue ("Notice") Defendant in a district court in Colorado. The Notice is attached, and incorporated herein by reference, as **Exhibit 2**. This *Complaint* is filed within ninety days thereof.

## PARTIES

6. Plaintiff Rhonda Patterson-Eachus is a female over forty years of age, not actively engaged in military service, not under legal disability, a resident of the County of Weld, State of Colorado, and a U.S. Citizen.

7. Defendant United Airlines, Inc. is a corporation qualified to do, and is doing, business in the State of Colorado, with offices at 8900 Peña Boulevard, Denver, Colorado 80249.

8. At all times relevant to this *Complaint*, United engaged in an industry affecting commerce, employing twenty or more employees, and was an "employer" under the ADEA, 29 U.S.C. § 630(b), Title VII, 42 U.S.C. § 2000e(b), and CADA, Colo. Rev. Stat. § 24-34-401(3). Specifically, United is engaged in airline carrier services.

9. At all times relevant to this *Complaint*, United was acting through its agents, subagents, representatives, or its own employees or supervising employees, each of whom was acting within the course and scope of his or her agency or employment.

## ALLEGATIONS OF FACT

10. The above paragraphs are incorporated into the following allegations and claims for relief.

11. On September 21, 1986, Ms. Rhonda Eachus was hired by United as a Reservations Agent.

12. In October 1996, Ms. Eachus was promoted to Airport Operations Supervisor, which position she held for the next twenty-one years.

13. At all times relevant to her position as Airport Operations Supervisor, Ms. Eachus was herself supervised by Tamera Mitchell.

14. Over her thirty-one-year tenure, including as Airport Operations Supervisor, Ms. Eachus performed her duties satisfactorily; performance evaluations reflect numerous accolades from supervisors, colleagues, and employees under her supervision.

15. As recently as June 30, 2017, Rhonda was rated favorably on all counts; specific comments highlighted:

    a. Ms. Eachus' "high level of self[-]awareness of how you treat people. You feel strong about dignity and respect and demand it of others. You approach tough employee decisions with a firm honest approach. I have seen you be so kind and humble when someone has shown you could be wrong about a scenario or customer/employee interaction."

    b. Ms. Eachus' ability to "focus on delay performance and hold employees and yourself accountable for what occurs. In addition, you demand excellent

   customer service from our employees, and hold them to that standard. Well done Rhonda."

 c. Ms. Eachus' Manager's ability to "always depend on you to take action and ensure important issues have been taken to completion."

 d. Ms. Eachus' penchant of "tak[ing] time to mentor other newer Supervisors, sharing your expertise in the job. You are not afraid to voice your concerns but always willing to support decision[s] that may not s[i]t with you well."

 e. Ms. Eachus' ability to "demand your peers to be supportive of each other and you."

16. During her private time off from work and away from United's premises, Ms. Eachus maintained an account on Facebook.com with pages that cannot be viewed by the public.

17. In or about mid-2017, two conflicting petitions regarding Weld Central High School's Civil-war-era-soldier-looking mascot, the Weld Central Rebel, were circulating online.

18. According to the Greeley Tribune, "[t]he petitions — one advocating a change in school mascot, the other defending its existence — mirror[ed] high-profile incidents across the nation regarding disagreements about Civil War monuments and homages." *See* August 26, 2017 Greeley Tribune article, attached, and incorporated herein by reference, as **Exhibit 3**.

5

19. According to the Weld Central Re-3J School District Superintendent Greg Rabenhorst, "the district's position is their rebel isn't a sign of racism, hate or violence, but one of school pride." *Id*.

20. As a Weld Central High School alumna with grandchildren attending the same school district and still living in the same, small, rural community, Ms. Eachus' sentiments echoed Superintendent Rabenhorst's, and those of 1,146 others, at the time, pledging their names in support of a Facebook petition to "Keep the mascot as the Rebels." *Id*.

21. In support of her political activity, Ms. Eachus also re-posted to her private Facebook page a video of an African American male opining in front of a confederate flag about how things are getting out of hand and that the flag is not the cause of the country's troubles.

22. Ms. Eachus' Facebook page showed her name on the petition in support of retaining the decades-old mascot, and the above-mentioned video, (hereinafter "Political Activity") both without comment from Ms. Eachus.

23. On or about August 23, 2017, it was brought to Ms. Eachus' attention by United Supervisor Guy Baron that a coworker, who was a Facebook friend of Ms. Eachus', had been offended by Plaintiff's Political Activity.

24. Ms. Eachus' "competence" or judgment as a supervisor was in no way called into question by her Political Activity: Once co-worker Velver Hazzard made Plaintiff aware of the affiliation between confederate symbols, like a "Rebel," and its legacy

6

of pain on African Americans, Ms. Eachus was moved to rescind her support, and take down her Political Activity postings.

25. On August 29, 2017, Ms. Mitchell issued Ms. Eachus a Documented Verbal Warning for allegedly violating United's Working Together Guidelines when the video she posted offended co-workers who were Plaintiff's Facebook friends. The warning stated that the "video must be removed immediately and direct reports from your 'friend' requests. *Rhonda had already accomplished this once she realized someone was offended*." (Emphasis added). Working Together Guidelines attached, and incorporated herein by reference, as **Exhibit 4**.

26. Without being provided a reason why by United, Ms. Eachus was suspended from her duties (referred to by United as "being held out of service") on September 12, 2017 while United investigated complaints from employees about some of Ms. Eachus' Facebook posts.

27. In the meeting with Director of Customer Service, Luke David, to discuss the suspension, Ms. Eachus was advised another issue had come up and they would need to remove her from service "for her own safety."

28. Mr. David advised Ms. Eachus her suspension had nothing to do with the Political Activity postings, but he could not discuss the situation any further.

29. Upon information and belief, while Plaintiff was held out of service, employees made statements about her in breakrooms and work areas claiming she was "racist" and threats of violence were made against her.

30. When allegations of employees' name-calling or threats of violence were reported to United management, upon information and belief, no disciplinary action was administered to the employees involved.

31. Ms. Eachus was not told what she was being investigated for until September 27, when Ed Eget and Charlette Norfleet advised her that a number of employees who were under Ms. Eachus' supervision reported to United management that they felt Ms. Eachus was harassing and discriminating against them for the previous two years.

32. These employees asserted to United that Ms. Eachus:

    a. instructed an employee not too wear too much makeup while at work;

    b. instructed an employee to change her hair color and nail polish color;

    c. instructed an employee not to allow her camisole to show from underneath her work uniform;

    d. asked an employee not to allow her tattoo to be visible while at work; and

    e. would mostly issue write-ups to minority and older employees and not Caucasian employees.

33. Ms. Eachus explained that she believed she was acting within her assigned duties and in a manner that aligned with her supervisory position.

34. United has a policy regarding proper attire while at work, which includes hair and nail color. Employees are not allowed to have visible tattoos while at work or to alter their Employer-issued uniforms.

35. Ms. Eachus' enforcement of Employer policies and issuance of formal discipline to these employees fell within Ms. Eachus' authority and discretion as their supervisor.

36. Ms. Eachus issued formal discipline to employees who violated known United policies.

37. In administering formal discipline to employees, Ms. Eachus followed a process called the Employee Performance System ("EPS"), providing United notice of such discipline.

38. United received no complaints about Ms. Eachus or her supervision prior to September 12, 2017.

39. Ms. Eachus received no warnings from United about her job performance prior to September 12, 2017.

40. Ms. Eachus fully cooperated during the investigation, providing names and contact information of witnesses, including former managers, shop stewards, peers and other employees.

41. While under suspension, to restore her good name Ms. Eachus felt pressured to provide United her Facebook username and password or private pages stored on her Facebook account.

42. United accessed such private information electronically stored with Facebook and advised Ms. Eachus to delete or "unfriend" people from her Facebook account, which she dutifully obliged.

43. United concluded its *pro forma* investigation contacting none of Ms. Eachus' proffered witnesses.

44. By letter dated October 16, 2017, (hereinafter "Termination Letter") United advised Ms. Eachus that it construed her since-removed Political Activity postings to be in "clear violation of our United Social Media Policy and the Company's Working Together Guidelines."

45. For her posting, United determined Ms. Eachus was in violation of a "guideline" of general applicability to all employees, not to any "particular employee or a particular class of employees," such as a manager or supervisor like Ms. Eachus. *See* Colo. Rev. Stat. § 24-34-402.5(1)(a).

46. Notwithstanding that Ms. Eachus was so moved by a co-worker's entreaties and removed her Political Activity postings, the Termination Letter further stated that, "Our progressive discipline process is based on changing behavior but that is not possible if you do not acknowledge that what you did was wrong and take ownership of your offensive and inappropriate behavior."

47. The Termination Letter also advised Ms. Eachus that United was forfeiting all of her perquisites earned over her thirty-one years of loyal service, including "any form of pass travel, including travel as the spouse, partner, travel companion, child, parent, or buddy pass rider of an employee or retiree."

48. Plaintiff appealed her termination using the internal corporate appeal process as previously guaranteed to employees, but United upheld the termination decision.

49. Similarly-situated employees outside of Ms. Eachus' protected class by age or gender were neither stripped of their progressive discipline rights nor refused an option to transfer or retire despite their actual or alleged violations of laws, policies, or guidelines.

50. Similarly-situated employees who did not engage in Political Activity were neither stripped of their progressive discipline rights nor refused an option to transfer or retire despite their actual or alleged violations of laws, policies, or guidelines.

51. United's reasons for the above-described actions against Ms. Eachus were false, exaggerated or pretextual.

52. A showing of falsity, pretext or suspicion of mendacity, as in the instant case, creates a case for jury determination of Ms. Eachus' claims. *Tyler v. Re/Max Mtn. States, Inc.*, 232 F.3d 808 (10th Cir. 2000) ("[W]hen Plaintiff casts substantial doubt on many of the employer's multiple reasons, jury could reasonably find employer lacks credibility.").

53. The above-described actions against Plaintiff constituted gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

54. The above-described actions against Plaintiff constituted age discrimination in violation of the ADEA, 29 U.S.C. § 623(a)(1) *et seq*.

55. The above-described actions against Plaintiff were willful. They were also taken with malice and reckless indifference to Plaintiff's rights protected by law, warranting an award of exemplary damages.

56. Because of the above-described actions, Plaintiff has suffered: loss of her employment, with all attendant benefits and other amenities thereof, including pay, compensation, benefits and salary, as well as future pecuniary losses, present and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

57. Following the petition, Superintendent Rabenhorst was retained in his leadership position with the School District; the Weld Central Rebel mascot was also retained.

58. The above-stated paragraphs are incorporated into the following Claims for Relief, all of which wrongs against Plaintiff caused her damages as sought in the *Ad Damnum* clause below. In addition, the averments of the following claims are incorporated into each other.

**FIRST CLAIM FOR RELIEF**
**(Violation of Title VII, 42 U.S.C. § 2000e *et seq*.)**

59. By the aforesaid acts of discrimination against Plaintiff, Defendant breached Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

**SECOND CLAIM FOR RELIEF**
**(Violation of the ADEA, 29 U.S.C. § 623(a)(1) *et seq*.)**

60. By the aforesaid acts of discrimination against Plaintiff, Defendant breached the ADEA.

**THIRD CLAIM FOR RELIEF**
**(Violation of ECPA, 18 U.S.C. 2701, *et seq*.)**

61. By the aforesaid acts, in accessing Plaintiff's private pages stored on Facebook, without permission, and using improperly accessed electronic communications to

wrongfully discharge Plaintiff, Defendant violated the Stored Communications Act provisions of the ECPA.

## FOURTH CLAIM FOR RELIEF
### (Violation of LODAS, Colo. Rev. Stat. § 24-34-402.5)

62. By the aforesaid acts against Plaintiff, Defendant violated LODAS' prohibition against terminating an employee due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours without meeting any of LODAS' narrow exceptions.

## FIFTH CLAIM FOR RELIEF
### (Violation of CADA, Colo. Rev. Stat. § 24-34-402, *et seq.*)

63. By the aforesaid acts of discrimination against Plaintiff, Defendant breached the provisions of CADA.

## SIXTH CLAIM FOR RELIEF
### (Unlawful Prohibition of Employee Political Activity Colo. Rev. Stat. § 8-2-108)

64. By the aforesaid acts, Defendant violated Plaintiff's rights to engage in political activity under Colo. Rev. Stat. § 8-2-108 prohibiting an employer to adopt or enforce any rule, regulation, or policy forbidding or preventing any of its employees from engaging in or participating in politics.

## SEVENTH CLAIM FOR RELIEF
### (Retaliatory Discharge)

65. By the aforesaid acts, Defendant wrongfully discharged Plaintiff in violation of Colorado public policy.

66. Defendant prohibited Plaintiff from performing a public duty, that of engaging in political activity under Colo. Rev. Stat. § 8-2-108, or from otherwise engaging in lawful off-duty activity.

67. Defendant's demand that Plaintiff cease her lawful off-duty activity or political participation violated specific statutes, including Colo. Rev. Stat. § 8-2-108 and CADA, of which LODAS is a part.

68. Plaintiff was terminated for initially failing to cease lawful off-duty or political activity as directed by Defendant or for engaging in lawful off-duty or political activity.

69. Defendant was aware or reasonably should have been aware that Plaintiff's off-duty or political activity, or failure to follow Defendant's order that she cease engaging in same, was based on her reasonable belief that the action ordered by Defendant was illegal or contrary to clearly expressed statutory policy relating to Plaintiff's duty as a citizen.

## EIGHTH CLAIM FOR RELIEF
**(Breach of Implied and/or Quasi-Contracts)**

70. Various of Defendant's policies, procedures, or other commitments became an implied part of Defendant's offer of employment or of the terms or conditions of Plaintiff's regular, full-time employment.

71. Defendant's policies, procedures, or other commitments included, without limitation:

    a. Progressive discipline procedures;

    b. Fairness or due process during workplace investigations;

    c. Social networking policy (United recognizes that employees may engage in "Social networking" [which] includes all types of postings on the internet, including but not limited to social networking sites (such as . . . Facebook)");

    d. Promoting dignity and respect policy (United is committed to providing a work environment free from discrimination (treating someone less favorably) based on age or gender); or

    e. Violence in the workplace (United is committed to providing a work environment that is free from acts and/or threats of violence . . . Employees who violate this policy may be subject to disciplinary action, up to and including discharge).

72. Plaintiff accepted Defendant's offer, or continued employment, with an understanding Defendant would not breach its promises.

73. By its failures to honor its promises, Defendant has breached implied contracts or quasi-contracts with Plaintiff.

## **PRAYER AND JURY DEMAND**

WHEREFORE, Plaintiff respectfully moves this court and prays for:

    a. a declaratory judgment declaring that Defendant has violated the above-described statutes and committed the above-described wrongs by the aforesaid acts against Plaintiff;

    b. re-employment with Defendant with restoration of the level of compensation and other amenities of employment that she would be earning were it not for the wrongful and illegal actions described herein;

c. all compensation, back pay, equal pay, front pay and benefits that Plaintiff was denied because of Defendant's acts, in a sum to be determined by the court and jury;

d. liquidated and compensatory damages, including for past, present and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

e. statutory damages, pursuant to 18 U.S.C. 2707, in a sum to be determined by the court and jury;

f. exemplary or punitive damages in a sum to be determined by the court and jury;

g. legal fees, disbursements, expert fees, and costs of this action;

h. all legal interest on sums awarded;

i. all issues so triable to be decided by a jury;

j. such other relief as the court may deem appropriate.

Dated this 13th day of May, 2019.

        Respectfully submitted,

        CIANCIO, CIANCIO, BROWN, P.C.

        */s/ Dipak P. Patel*
        390 Interlocken Cres. Ste. 350
        Broomfield, CO 80021
        (303) 451-0300 telephone
        (303) 464-8000 facsimile
        dipakpatel@colo-law.com

        *Attorneys for Plaintiff*

**Plaintiff's Address:**

Rhonda Patterson-Eachus
18034 Sagebrush Way RR1
Brighton CO 80603